UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL R.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　Defendant. | Case No. 2:17-cv-07266-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

In January 2014, Manuel R. ("Plaintiff") filed an application for social security disability benefits ("SSDI") alleging disability commencing August 20, 2012, due to shoulder pain, depression, anxiety, sleep disturbances, back pain, leg pain, and hand pain. Administrative Record ("AR") 134-40. Plaintiff was born in 1962 and has a marginal education, having dropped out of school in Mexico in the 6th grade. AR 82, 67.

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

1

On October 29, 2015, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was unrepresented,[2] appeared and testified, as did a medical expert ("ME") and a vocational expert ("VE"). AR 42-80.

On May 16, 2016, the ALJ issued a decision denying Plaintiff's application. AR 20-34. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of (1) degenerative disc disease of the lumbar spine with right-sided radiculopathy, status post laminectomy on August 20, 2012 (i.e., his alleged onset date); (2) degenerative disc disease of the cervical spine; (3) rotator cuff tendinosis of the left shoulder; (4) history of rotator cuff tear of the right shoulder; and (5) major depressive disorder. AR 25-26.

Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work a reduced range of light work including limitations on reaching and postural activities, a limitation to standing or walking only 15 minutes at a time with the use of a cane, and doing "simple, routine, and repetitive tasks" with only incidental interpersonal interactions. AR 28.

Based on the RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work as a truck driver or lot attendant. AR 32. The ALJ found, however, that Plaintiff could work as a marker (Dictionary of Occupational Titles ("DOT") 920.687-126), production assembler (DOT 706.687-010), or semiautomatic sewing machine operator (DOT 786.785-030). AR 33. The ALJ concluded that Plaintiff was not disabled. AR 34.

## II.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error

---

[2] Plaintiff is represented by counsel in his federal court appeal.

and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

### III.
### ISSUES PRESENTED

Issue One: Whether the ALJ deprived Plaintiff of a fair hearing.

Issue Two: Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony.

(Dkt. 26, Joint Stipulation ["JS"] at 3.)

# IV.

# DISCUSSION

A. **ISSUE ONE: The Fairness of the Hearing Process.**

    **1. Summary of Claimed Errors.**

In a social security case, the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Circuit 1996) (citation omitted). Plaintiff argues that the ALJ failed to discharge this duty by (1) failing to prompt Plaintiff to question the VE; and (2) accepting into the AR post-hearing Exhibits 18F and 19F (interrogatories [AR 1866-69] and responses [AR 1870] from ME Dr. Ghazi) and relying, in part, on that evidence to deny benefits without giving Plaintiff notice and an opportunity to respond.

    **2. Questioning the VE.**

When Dr. Ghazi finished his testimony, the ALJ asked Plaintiff if he had any questions for the ME. AR 52. Plaintiff asked him a question about a recent MRI. Id. In contrast, when the ALJ finished questioning the VE, Ms. Maron, the following exchange occurred:

    ALJ: I don't need to ask anything else. All right, Ms. Maron, that's
    going to do it. Mr. [R.] – so, Ms. Marron, let me, let me release you
    as a witness. Okay?

    VE: Yes. I will be waiting.

    ALJ: We'll call you on the next one.

    VE: Thank you.

    ALJ: All right. Mr. [R.], so we got a plan now. What I need to do
    is, is get those additional medical records, okay? I'll consider those
    along with all the testimony that we had today and I will, I'll make a
    written decision. It's going to be a little delayed because I'm going
    to get those records directly. The order's going to be that you have

1      30 days to submit anything else that you think I need to see.
2      Clmt: Okay, sir.
3 AR 77.
4      Based on this testimony, Plaintiff argues that he neither received an opportunity to question the VE nor waived his right to do so. (JS at 8-9.) He further argues that this was legal error or an abuse of discretion amounting to a due process violation, and that the only remedy is remand to permit him to question the VE. (Id.) He suggests questions that his attorney could ask the VE that might elicit testimony relevant to the ALJ's conclusions. (Id. at 9.)

      A disability claimant is entitled to such cross-examination as may be necessary to develop the facts fully and accurately. 5 U.S.C. § 556(d). The ALJ has the discretion to decide whether cross-examination is necessary. Solis v. Schweiker, 719 F.2d 301, 302 (9th Cir. 1983). When a disability claimant does not request an opportunity to cross-examine an expert, he may not complain in an appeal that he was denied the right of confrontation and cross-examination. Moon v. Astrue, 2012 U.S. Dist. LEXIS 86370, at *25-26 (E.D. Cal. June 20, 2012) (citing Richardson, 402 U.S. at 404-05). Moon presented the same facts as this case: the ALJ failed to offer a self-represented claimant the opportunity to question the VE. The district court found no legal error. Id.

      Given Plaintiff's informed choice to represent himself (AR 42-44), demonstrated ability to ask questions about matters of concern (AR 52), and the ALJ's asking "Okay?" before dismissing Ms. Maron as a witness (AR 77), Plaintiff has failed to carry his burden of demonstrating prejudicial legal error.

   **3. Responding to Dr. Ghazi's Interrogatory Responses.**

      At the hearing, the medical evidence ended at Exhibit 11F, i.e., AR 708-09. AR 53. After the hearing, the ALJ received additional medical evidence at AR 710-1864. The ALJ sent these new exhibits to Dr. Ghazi and asked, via interrogatories, if the new evidence caused any change to his hearing testimony.

AR 1867. Dr. Ghazi responded "no." AR 1870. He added a notation, "The new exhibits do not present any different evidence of the claimant's previously assessed condition." (Id.)

When an ALJ receives post-hearing evidence, the ALJ is required to notify the claimant in writing and give the claimant "an opportunity to review and comment on the additional evidence." 20 C.F.R. § 416.1416(f). Defendant agrees that the ALJ failed to do so regarding Dr. Ghazi's responses to the interrogatories but argues that the error was harmless. (JS at 12.) Per Defendant, Plaintiff heard Dr. Ghazi's testimony at his hearing and had the opportunity to question him. (Id., citing AR 49, 52-55). Thus, Plaintiff already had the opportunity to question Dr. Ghazi regarding his opinions, and the 1-page, check-the-blank interrogatory responses only confirmed that his opinions had not changed. (Id., citing AR 1870.)

Plaintiff responds that he did not have an opportunity to question Dr. Ghazi as to why the new medical records did not change his opinions and cause him to assess additional functional limitations. Plaintiff points to records documenting diminished strength of a foot muscle and argues that Plaintiff could have asked Dr. Ghazi why these new records did not justify a restriction against operating foot controls. (JS at 7, citing AR 1040, 1046, 1052, 1058, 1063, 1068, 1073, 1078.[3]) Similarly, Plaintiff points to records indicating that he complained of neck pain and pain radiating down his upper extremities and argues that he could have asked Dr. Ghazi why these new records did not change his opinion that Plaintiff's "upper extremities are normally functioning," perhaps resulting in limitations on handling or fingering. AR 47.

---

[3] These records are summarized as follows: AR 1040 (progress report summarizing Plaintiff's history, assessing his gait as "non-antalgic," rating his right-side planta dorsiflexion EHL as "4+/5," and finding a reduced range of spinal motion); AR 1046 (same); AR 1052 (same); AR 1058 (same); AR 1063 (same); AR 1068 (same); AR 1073 (same); AR 1078 (same).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Plaintiff has not met this burden. He has not concretely identified any information in the new exhibits about which he might have questioned Dr. Ghazi and prompted a material change in Dr. Ghazi's opinions. First, at the hearing, Dr. Ghazi was aware that Plaintiff reported suffering from disabling pain. There is no likelihood that questioning Dr. Ghazi about the subjective complaints in Plaintiff's new medical evidence would have changed Dr. Ghazi's opinions. Second, even if Plaintiff had questioned Dr. Ghazi about new evidence rating his right-side planta dorsiflexion EHL as "4+/5," Plaintiff has made no showing that (1) such a minor deficit would affect his ability to operate foot controls, or (2) that any of the three alternate jobs identified by the ALJ require operating foot controls. Indeed, Plaintiff admits that he can drive and does so daily, thereby demonstrating an ability to use foot controls. AR 62; see also Hart v. Massanari, 20 Fed. App'x 668 (9th Cir. 2001) (holding that any error that may have resulted from the claimant's inability to comment on post-hearing reports was harmless).

B. **ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

**1. Rules for Evaluating Subjective Symptom Testimony.**

An ALJ's assessment of pain level is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citation omitted); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina, 674 F.3d at 1112 (citation omitted).

If the ALJ finds that a claimant's testimony as to the severity of his pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not

arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen, 80 F.3d at 1282.

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

### 2. Summary of the ALJ's Findings.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence of record …." AR 29. The ALJ ultimately gave seven reasons for discrediting Plaintiff's subjective symptom testimony: (1) lack of supporting objective evidence, (2) lack of significant mental health treatment, (3) treatment history inconsistent with the alleged degree of impairment, (4) inconsistency between Plaintiff's testimony and treating medical records, (5) poor compliance with medications, (6) symptoms are controlled with treatment, and (7) inconsistency with Plaintiff's daily activities.

As discussed further below, Reasons One, Two, Five, and Seven are

sufficient clear and convincing reasons to discount Plaintiff's testimony. The Court therefore does not reach the remaining reasons.

### 3. Analysis of the ALJ's Reasons.

    a. <u>Reason One</u>: Lack of Supporting Objective Evidence.

The lack of supporting objective evidence, standing alone, is insufficient to discount a claimant's subjective symptom testimony, but ALJs can consider it together with other clear and convincing reasons to discount that testimony. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

With respect to his physical symptoms, Plaintiff testified that his back "always hurts 24 hours a day," and his neck "always hurt[s]" and "won't let [him] sleep." AR 64. Plaintiff testified that he has a problem with a nerve in his right leg and his leg gives out after 10 to 15 minutes of walking. Id. He can lift a gallon of milk, but his elbow and shoulder "hurt[] so bad" when he tries to lift things. AR 65.

The objective medical evidence supports the ALJ's relatively restrictive RFC, but not Plaintiff's more extreme testimony. Plaintiff alleged low back pain beginning in 2004 after a car accident, but x-rays were negative and he continued to work as a truck driver until 2012.[4] AR 29, 1804, 152. He described that work as requiring frequent lifting of over 50 pounds. AR 183. Plaintiff underwent a laminectomy in August 2012 after being diagnosed with degenerative disc disease of the lumbar spine with right-sided radiculopathy. AR 29, 239-40. Nerve conduction studies in June 2013 of the lower extremities were within the normal

---

[4] Respondent views the ALJ's reference to Plaintiff's work history as an additional reason to discount his testimony. (See JS at 26.) The Court views it as part of the "objective medical evidence" reason.

limits. AR 276.  Although Plaintiff had decreased range of motion and tenderness as of April 2013 (AR 291), an April 2015 examination revealed that Plaintiff had no tenderness in his neck with a full range of motion, a normal respiratory/chest exam, regular heart and abdomen exams, no swelling in the extremities with a full range of motion, normal sensation, and a normal motor exam.[5]  AR 1789-90.  In July 2015, Plaintiff had a non-antalgic gait, decreased lumbar range of motion, diminished palpation and sensation to light touch, normal Achilles reflexes, tenderness in the cervical spine with decreased range of motion and diminished sensation, and intact motor strength.  AR 1040-41.  An August 2015 MRI showed no evidence of spondylolisthesis or compression deformity, although there was severe right neural foraminal narrowing at L4-5 possibly correlated with Plaintiff's surgical history (AR 29, 708-09).  A February 2016 CT of the lumbar spine showed stable findings with respect to the August 2015 MRI.  AR 1873-74.  An MRI of the left shoulder in January 2014 revealed mild rotator cuff tendinosis with moderate joint degeneration, but no tear or retraction.  AR 29, 659.  With respect to Plaintiff's alleged mental impairments, as discussed further below, there was minimal objective medical evidence to support Plaintiff's allegations of disabling mental impairments.

      The ALJ adequately accounted for Plaintiff's impairments with a restrictive RFC.  To the extent Plaintiff alleged more severe symptoms, the objective medical evidence did not support his allegations.  Thus, when considered alongside the below reasons, the ALJ appropriately considered this factor in discounting Plaintiff's testimony.

---

[5] The Court recognizes that this record is from an emergency room visit at which Plaintiff presented with statements that he wanted to kill himself but with no plan.  AR 1788.  There is no reason to think, however, that the physician who "personally performed" the physical exam did not accurately record the results of his examination.  AR 1793.

10

b. <u>Reason Two</u>: Lack of Significant Mental Health Treatment.

Regarding his mental impairments, Plaintiff reported that he has no problem with understanding and following instructions or completing tasks, but sometimes he cannot remember what he did last week and has trouble concentrating. AR 194. At the hearing, he testified that he is always thinking negative thoughts and does not see any hope for resolving his problems. AR 65. He feels like he is not present because he is worrying about his future, and he sometimes contemplates suicide so that he will not bother anyone. AR 65-66. He also testified that he has a "really bad memory" and "cannot keep things for too long [in his] head." AR 56.

The ALJ found that "there is virtually no evidence of mental health treatment." AR 30. The ALJ then summarized Plaintiff's mental health treatment records as follows:

> [Plaintiff] reported having depression since 2004. (AR 1788.) However, the record is devoid of evidence of treatment in this regard until progress reports in July 2013 through September 2013 indicating he had individual therapy and biofeedback to cope with depression, stress, anxiety, and insomnia. (AR 1842-64.) Notably, however, the treatment notes consist of no more than duplicated information. (<u>Id.</u>) In January 2014, a psychiatrist who conducted an initial evaluation in connection with the claimant's worker's compensation claim diagnosed major depressive disorder and recommended psychopharmacologic intervention. (AR 256-57.) A permanent and stationary report in February 2015 indicated that his psychotropic medications were likely reducing his psychological symptoms. (AR 1828.) In April 2015, he presented to the emergency department stating that he wanted to kill himself but had no plan. (AR 1788). However, on examination, he was stable and agreed with the treatment plan. (AR 1792.) Accordingly, the [RFC's] restriction

    to simple work with limited interpersonal contact more than
    adequately conforms to the limitations posed by the claimant's
    mental impairments.

AR 29-30. Ultimately, the ALJ found that his depressive disorder was a severe impairment and included significant restrictions in the RFC to account for its limiting effects, i.e., a restriction to simple, routine tasks with only incidental personal interactions. AR 28. Given Plaintiff's minimal treatment for his allegedly disabling mental impairments, the Court sees no legal error in the ALJ's analysis.

      c. <u>Reason Five</u>: Noncompliance with Prescribed Medications.

  The ALJ stated, "there is evidence of poor compliance with medications." AR 30, citing AR 1751 and 1755. These documents are progress notes from the Valley View Medical Clinic, summarized as follows:

  • AR 1755 (August 2013): It states, "poor compliance ć [with] meds" and "DM [diabetes mellitus] not well controlled;"[6] it lists prescriptions to be refilled, including one for the diabetes medication metformin.

  • AR 1753 (November 2013): It notes DM and HTN [hypertension]. It notes Plaintiff's A1C (blood sugar) and an increase in his dosage of metformin.

  • AR 1752 (August 2014): It discusses metformin and other medications, A1C, HTN, and obesity.

  • AR 1751 (August 2015): It states, "non-compliant ć [with] meds for DM [and] HTN."

  Thus, these records reflect non-compliance with prescribed medication for treating his diabetes and hypertension. That Plaintiff was noncompliant with this medication despite his allegations of extreme pain in many areas of his body is an

---

[6] Plaintiff is 5'6" and weighs approximately 250 pounds. AR 1638. At step two, the ALJ found that Plaintiff's diabetes was not severe. AR 26.

additional clear and convincing reason to discount his testimony. See Smolen, 80 F.3d at 1284 (noting that ALJ may consider unexplained or inadequately explained failure to follow prescribed course of treatment when assessing symptom testimony).

        d. <u>Reason Seven</u>: Inconsistent with Daily Activities.

The ALJ found that Plaintiff's alleged degree of impairment was inconsistent with his reported activities. AR 30. Per the ALJ, "His activities are reasonably normal and tend to show that he does have the ability to perform basic work functions." Id. As activities requiring exertion inconsistent with his subjective symptom testimony, the ALJ listed the following: performing personal care, doing household chores, shopping, carrying light groceries, driving his wife and son daily, reading, and watching TV. Id.

Plaintiff's shopping consists of two, 30-minute monthly outings and his grocery carrying is limited to bread or a gallon of milk. AR 65, 192. His household chores consist of washing dishes (daily), cleaning, sweeping the floor (weekly), and picking up trash outside with a hand extension (monthly). AR 191. He has no difficulties dressing, bathing, shaving, feeding himself, or using the toilet. AR 190. He takes care of his teenage son at home. Id. He needs no reminders to take care of his personal needs or take his medicine. AR 191. He needs no help or encouragement doing his chores. Id. He reads several times a week and watches television every day, with no change in these activities since the onset of his alleged disability. AR 193. He reports no changes in social activities since his alleged disability onset. AR 194. He follows written and spoken instructions well. Id. Plaintiff drives his son to school "mostly every day" and drives his wife to work. AR 62, 171.

At the very least, Plaintiff's mental activities, such as socializing, finishing projects, reading, and driving are inconsistent with his having a disabling cognitive impairment. Plaintiff's testimony concerning the limiting effects of his depression

13

is consistent with the restrictive RFC assessed by the ALJ (i.e., only simple, routine tasks with limited socializing).  Furthermore, it is unlikely that a person with Plaintiff's alleged physical impairments would have no difficulties performing personal care and the home chores that Plaintiff described.  This is a further clear and convincing reason to discount Plaintiff's testimony.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED:  October 25, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge